Salzberg v Sena (2022 NY Slip Op 02446)

Salzberg v Sena

2022 NY Slip Op 02446

Decided on April 13, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 13, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
ANGELA G. IANNACCI
JOSEPH J. MALTESE
WILLIAM G. FORD, JJ.

2018-07979
2019-04700
 (Index No. 50399/16)

[*1]Charles Andrew Salzberg, et al., appellants,
v
Kenneth Sena, et al., respondents, et al., defendants.

Michael B. Kramer, New York, NY (Peter T. Salzler of counsel), for appellants.
Dorf & Nelson LLP, Rye, NY (Jonathan B. Nelson of counsel), for respondents.
In an action, inter alia, for a judgment declaring that the plaintiffs are the owners of certain real property by adverse possession, the plaintiffs appeal from (1) an order of the Supreme Court, Westchester County (Linda S. Jamieson, J.), dated June 4, 2018, and (2) a judgment of the same court (Charles D. Wood, J.) dated March 15, 2019. The order granted the motion of the defendants Kenneth Sena and Joseph Mazzaferro for summary judgment dismissing the complaint insofar as asserted against them, on their second counterclaim, for a judgment declaring that they are the owners of the subject real property, and on the issue of liability on their first and third counterclaims. The judgment, upon the order, and upon an amended decision of the same court (Charles D. Wood, J.) dated January 8, 2019, made after an inquest on the issue of damages, is in favor of those defendants and against the plaintiffs, in effect, dismissing the complaint insofar as asserted against them and awarding them the principal sum of $50,250 on their first and third counterclaims.

DECISION & ORDER
By order to show cause dated June 25, 2021, the parties to the appeals were directed to show cause before this Court why the appeal from the order dated June 4, 2018, should or should not be dismissed on the ground that the right of direct appeal from that order terminated upon entry in the above-entitled action of the judgment. By decision and order on motion dated August 25, 2021, the Court's motion was held in abeyance and referred to the panel of Justices hearing the appeals for determination upon the argument or submission thereof.
Upon the order to show cause and the papers filed in response thereto, and upon the argument of the appeals, it is
ORDERED that the Court's motion to dismiss the appeal from the order dated June 4, 2018, is granted; and it is further,
ORDERED that the appeal from the order dated June 4, 2018, is dismissed; and it is further,
ORDERED that the judgment is reversed, on the law, the motion of the defendants [*2]Kenneth Sena and Joseph Mazzaferro for summary judgment dismissing the complaint insofar as asserted against them, on their second counterclaim, for a judgment declaring that they are the owners of the subject real property, and on the issue of liability on their first and third counterclaims is denied, the complaint is reinstated insofar as asserted against those defendants, and the order is modified accordingly; and it is further,
ORDERED that one bill of costs is awarded to the plaintiffs.
The plaintiffs and the defendants Kenneth Sena and Joseph Mazzaferro (hereinafter together the defendants) own adjacent parcels of real property in Croton-on-Hudson. The plaintiffs purchased their property in 2011 from Daniel Scalzi, who had previously owned the property jointly with his former wife, Victoria Manes, until she transferred ownership to him in 2004. According to Scalzi, in 1987, he spent $12,000 to clear a portion of land along the common boundary of the properties (hereinafter the disputed strip), which at that time consisted of "unusable forest-like area," and to erect a split rail fence on the disputed strip, so as to integrate it into his lawn. Scalzi asserted that, thereafter and for the duration of his ownership of the property, he cultivated and maintained the disputed strip, which also included a portion of a barbeque pit that had been built onto his property by a predecessor. Scalzi admitted that during the process of clearing the disputed strip and erecting the fence, he realized, upon his discovery of concrete monuments in the ground, that he was over the boundary line of his property and encroaching somewhat onto the neighboring property. However, Scalzi asserted that he never advised the then owners of the defendants' property or asked their permission to use a portion of their land.
In April 2014, the defendants purchased their property from Barry Friedman and Patricia Pastor. In November or December 2015, the plaintiffs repaired and lengthened the split rail fence, at which point, the defendants asserted that the fence was on their property and demanded that the plaintiffs remove the entire fence. In December 2015, the defendants had a contractor remove the fence and the plaintiffs cut down a tree from the disputed strip.
The plaintiffs thereafter commenced this action, seeking, among other things, a judgment declaring that they are the owners of the disputed strip by adverse possession. The defendants asserted counterclaims for a judgment declaring that they are the owners of the disputed strip (second counterclaim), and to recover damages for trespass (third counterclaim) and destruction of the tree (first counterclaim). After the completion of discovery, the defendants moved for summary judgment dismissing the complaint insofar as asserted against them, on their second counterclaim and on the issue of liability on their first and third counterclaims. The Supreme Court granted the motion, and, after an inquest, awarded damages to the defendants in the principal sum of $50,250. A judgment dated March 15, 2019, was issued in favor of the defendants and against the plaintiffs in the principal sum of $50,250. The plaintiffs appeal.
"In 2008, the adverse possession statute (RPAPL art 5) was amended in its entirety (L 2008, ch 269) to, among other things, discourage people from claiming adverse possession over real property they know belongs to another with superior ownership rights" (Estate of Becker v Murtagh, 19 NY3d 75, 81 n 4). It is undisputed, however, that these amendments are not applicable here, since, as alleged, the plaintiffs' property right vested prior to the enactment of those amendments (see SLC Coram, LLC v 543 Middle Country Rd. Realty, LLC, 161 AD3d 1122, 1123).
Under the pre-amendment law, in order to establish a claim to property by adverse possession, a claimant must prove, by clear and convincing evidence, that possession of the property was "(1) hostile and under [a] claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for the required period" (Walling v Przybylo, 7 NY3d 228, 232; see SLC Coram, LLC v 543 Middle Country Rd. Realty, LLC, 161 AD3d at 1123-1124). "In addition, where, as here, the claim of right is not founded upon a written instrument, the party asserting title by adverse possession must establish that the land was 'usually cultivated or improved' or 'protected by a substantial inclosure'" (Estate of Becker v Murtagh, 19 NY3d at 81, quoting RPAPL former 522).
In the present case, the Supreme Court concluded that the defendants were entitled [*3]to summary judgment dismissing the complaint insofar as asserted against them and on their second counterclaim because, as a matter of law, Scalzi did not possess the property under a claim of right. Under the common law, "[t]his element is satisfied where an individual asserts a right to the property that is 'adverse to the title owner and also in opposition to the rights of the true owner'" (Estate of Becker v Murtagh, 19 NY3d at 81, quoting Walling v Przybylo, 7 NY3d at 232). "[A]n adverse possessor's actual knowledge of the true owner is not fatal to an adverse possession claim" (Walling v Przybylo, 7 NY3d at 233; see Hogan v Kelly, 86 AD3d 590; Asher v Borenstein, 76 AD3d 984, 986). "'The ultimate element in the rise of a title through adverse possession is the acquiescence of the real owner in the exercise of an obvious adverse or hostile ownership through the statutory period'" (Walling v Przybylo, 7 NY3d at 232, quoting Monnot v Murphy, 207 NY 240, 245). "The purpose of the hostility requirement is to provide the title owner notice of the adverse claim through the 'unequivocal acts of the usurper'" (Bratone v Conforti-Brown, 150 AD3d 1068, 1070, quoting Monnot v Murphy, 207 NY at 245).
"To be distinguished from the possessor's subjective knowledge that another holds title, the possessor's overt acknowledgment of title in another negates the element of hostility because it undermines notice to the owner that another is possessing the land under claim of title" (Larsen v Hanson, 58 AD3d 1003, 1004 [internal quotation marks omitted]). Thus, where the possessor, for example, seeks "permission for use from the record owner" (Estate of Becker v Murtagh, 19 NY3d at 82 [internal quotation marks omitted]), offers to purchase the disputed property from the owner (see Larsen v Hanson, 58 AD3d at 1004-1005), or orally concedes to the owner that title rests with the owner (see Van Gorder v Masterplanned, Inc., 78 NY2d 1106, 1107-1108, revg 161 AD2d 920), the owner is no longer on notice of an adverse claim against his or her land and the element of hostility is negated.
In the present case, the Supreme Court determined that, as a matter of law, Scalzi's possession was not hostile and under a claim of right for the entire statutory period because at some point within that period, Manes acknowledged to Evelyn Neumann, the daughter of a former owner of the defendants' property, that she and Scalzi did not have title to the disputed strip. Even assuming that Manes had this alleged communication with Neumann, it is undisputed that several years prior to the alleged communication, Neumann's mother had sold the property to Friedman and Pastor. In other words, any communication that Manes had with Neumann regarding the disputed strip occurred at a time when neither Neumann nor her mother had any ownership interest in the defendants' property, as ownership had already been transferred to Friedman and Pastor. It cannot be said as a matter of law that any communication by Manes to Neumann, an individual with no interest in any property at issue here, negated the element of hostility (cf. Van Gorder v Masterplanned, Inc., 78 NY2d at 1107-1108; Albright v Bessimer, 288 AD2d 577, 579).
The defendants further failed to affirmatively demonstrate, prima facie, that the plaintiffs' alleged possession of the disputed strip was not actual, open and notorious, exclusive, and continuous, or that the plaintiffs did not usually cultivate or improve the land, or protect it by a substantial enclosure (see generally Ray v Beacon Hudson Mtn. Corp., 88 NY2d 154). "It is a defendant's burden, when it is the party moving for summary judgment, to demonstrate affirmatively the merits of a defense [or counterclaim], which cannot be sustained by pointing out gaps in the plaintiff's proof" (Quantum Corp. Funding, Ltd. v Ellis, 126 AD3d 866, 871).
Accordingly, the Supreme Court erred in granting the defendants' motion for summary judgment dismissing the complaint insofar as asserted against them and on their second counterclaim, as well as on the issue of liability on their first and third counterclaims, the resolution of which were dependent upon the determination that the defendants were the owners of the disputed strip. We therefore reverse the judgment, deny the defendants' motion, and reinstate the complaint insofar as asserted against the defendants.
DUFFY, J.P., IANNACCI, MALTESE and FORD, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court